UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Link to: 47

## CIVIL MINUTES - GENERAL

**Case No.** CV 03-5548-GAF         **Date:** August 5, 2004
**Title:** Gevirtz v. Four Star Financial, et al.

### The Honorable Gary Allen Feess, Judge

_Deba L. O'Neill for_
Marilynn Morris                    None Present
**Courtroom Deputy Clerk**         **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**      **ATTORNEYS PRESENT FOR DEFENDANTS:**
None Present                               None Present

**PROCEEDINGS:** (In Chambers)

### RULING ON MOTION TO FOR JUDGMENT ON THE PLEADINGS

Plaintiff has brought suit against the defendants for alleged securities fraud under Sections 10 and Rule 10b-5 of the Securities Exchange Act of 1934 and Section 12 of the Securities Act of 1933. He also asserts state law claims for fraud, breach of fiduciary duty, negligence and unfair business practices.[1] Defendants Anson, Garrett & Co., Jack Garret and Ronald Anson now move under Rule 12(c), for judgment on the pleadings on the federal claims and for dismissal of the supplemental state law claims. The Court concludes that the matter is capable of resolution without the argument of counsel. Accordingly, the hearing set in this matter for Monday August 9, 2004 is hereby **VACATED**. See FED. R. CIV. P. 78; Local Rule 7-15.

#### A. THE LEGAL STANDARD

##### 1. Rule 12(c) Motions

If the Court denies the motion as to one or more federal claims, defendants seek dismissal of the state law causes of action for failure to state a claim on which relief can be granted. Because the motion challenges the face of the pleadings, the Court applies the same standard as applied to motions under Rule 12(b)(6). Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The Court must

---

[1] The Third Cause of Action alleging a RICO violation was previously dismissed and has not been amended within the time allotted. Accordingly, it is no longer a part of the First Amended Complaint, which is the operative complaint in this case.

MINUTES FORM 11
CIVIL--GEN                        -1-                 Initials of Courtroom Deputy Clerk

assume the truth of the material factual allegations of the operative complaint, McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988), and must construe the complaint, and resolve all doubts, in the plaintiff's favor. General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

### 2. Federal Securities Fraud Litigation

In addition, where the motion presents a challenge to a federal securities fraud complaint, the requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15U.S.C. § 78u-4(b), come into play. Subsection (1) provides that any allegation that a defendant has made an untrue statement of material fact, or has misled the investor through the omission of material facts must include "each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." Likewise, subsection (2) requires that, in connection with allegations that a defendant acted with a particular state of mind, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each alleged false or misleading statement or omission. See, e.g., In re Silicon Graphics, Inc. Securities Litig., 183 F. 3d 970, 986 (9th Cir. 1999).

### B. THE SECTION 10 CLAIM

Defendants do not dispute that the representations described in the complaint address materials that are "material" within the meaning of Section 10 of the 1934 Act. Rather, Defendants argue that the alleged misrepresentations and omissions lack specificity as to who made the statements, when the statements were made, and the circumstances under which they were made. The Court concludes that the argument has merit.

By way of example, the Court notes that the FAC contains the following statements, among many others:

– On or about July 2002, "*Defendants* provided plaintiff with a private placement memorandum (PPM) offering securities in the form of $25,000 membership units in Four Star" (FAC ¶ 13).

– After a description of numerous statements in the PPM, the FAC alleges that the statements were false and that *"Defendants"* made them knowing they were false (Id. ¶ 14).

– *"Defendants"* explained cash flow problems as arising from "a liquidity shortfall related to a delay in securing the cash proceeds" from the sale of an arbitrage portfolio (Id. ¶ 16(c)).

– The sale of the arbitrage portfolio was "expressly mischaracterized by *Defendants* to Plaintiff as a significant windfall for Four Star." (Id. ¶ 16(c)).

– The final report on the subject was presented to Plaintiff by *"Defendants"* who made vague statements regarding the status of the proceeds. (Id. ¶ 16(d)).

– Plaintiff alleges that he "received two balance sheets from *Defendants*" regarding the financial status of Four Star Financial; the balance sheets purportedly lacked a

"reasonable factual basis," which was allegedly known by "each of the Defendants." (Id. ¶ 18, Second Bullet Point).

– *"Defendants, and each of them"* through "the aforementioned meetings" allegedly failed to disclose certain material facts, including information regarding the criminal investigation and prosecution of Four Star and Cohn, the true situation regarding the company's cash flow position, the use to which Plaintiff's funds would be put, the deteriorating financial condition of the company, and the like. (Id. ¶ 20(a)-(j)).

– *"Defendants, and each of them*, have to this date continued their misrepresentations and attempted cover-up of their intentional material misrepresentations and omissions via inaccurate and incomplete communications to Plaintiff concerning criminal proceedings and the locations and liquidity of the sums traced to Plaintiff's investment." (Id. ¶ 23).

– "*Defendants'* material misrepresentations and/or omissions were made knowingly or recklessly and for the purpose and effect of inducing Plaintiff to purchase units of the Four Star Security. The *Defendants, and each of them*, had no reasonable basis for their many misrepresentations and, indeed, based on their abject and demonstrable falsity intentionally used them in their scheme to intentionally defraud Plaintiff. *Scienter is manifest.*" (Id. ¶ 28).

This recitation is representative of the large majority of the allegations of the FAC. Indeed, the FAC contains only a single reference – Paragraph 18, First Bullet Point – to any specific conduct of Anson and Garrett in connection with the fraud claim. Thus, since the Court cannot determine when and by whom most of the specific misrepresentations were made, the Court cannot assess allegations of scienter, which require the statement of specific facts giving rise to an inference that a defendant, in connection with a specific alleged false statement, knew or had reason to know that the statement was false or misleading. For example, if Plaintiff contends that Defendant Anson gave him the PPM in July 2002, and that statements in the PPM were false, he must provide specific detail that would give rise to a strong inference that Defendant Anson, in July 2002, knew that the statements were false and made them to induce Plaintiff's reliance. See, e.g., In re Vantive Corp. Sec. Litig., 2823 F.3d 1079, 1084-85, 1091 (9th Cir. 2002); Ronconi v. Larkin, 253 F.3d 423, 429 (9th Cir. 2001). But the FAC fails to state, with particularity, who provided Plaintiff with the PPM. This flaw is repeated throughout the FAC.

In sum, while the Plaintiff has probably alleged, with sufficient particularity, that specific, material false statements were made to induce him to invest in Four Star Financial, his failure to tie the false statements to particular defendants precludes him from establishing, with the required particularity, a factual basis for the scienter element under 15 U.S.C. § 78u-4(b)(2). Plaintiff may be able to do this, but he has not met that requirement in the FAC. Indeed, in the Court's view, the pleading is insufficient to meet the lower standard for particularity established under Rule 9(b), Fed.R.Civ.P.

Accordingly, the motion for judgment on the pleadings on the First Cause of Action is **GRANTED, but WITH LEAVE TO AMEND.** Plaintiff will have until September 3, 2004 to file with the Court a Second Amended Complaint.

## C. THE SECTION 12 CLAIM

Defendants contend that Plaintiff fails to plead a crucial element of his section 12 claim – that Defendants made a public offering. Although, on its face, section 12 appears to apply to all offerings irrespective of whether they are made in the primary or secondary market, section 12 was deemed only to apply to public offerings by the U.S. Supreme Court in Gustafson v. Alloyd Co., 513 U.S. 561 (1995). The Court reiterated at the end of the decision: "In sum, the word prospectus is a term of art referring to a document that describes *a public offering of securities* by an issuer or controlling shareholder. The contract of sale [at issue], and its recitations, were not held out to the public and were not a prospectus as the term is used in the 1933 Act." Id. at 584 (emphasis added). Since Gustafson, many courts have applied its analysis to the sale of securities made via private placement memoranda ("PPM") and have found that such sales are not public offerings. See Kainos Labs., Inc. v. Beacon Diagnostics, Inc., 1998 U.S. Dist LEXIS 23473, *11-15 (N.D. Cal. September 14, 1998) (listing decisions); Vannest v. Sage, Rutty & Co., Inc., 960 F. Supp. 651, 655 (W.D.N.Y. 1997) (action dismissed based on section 12(2) because the PPM expressly stated that the offering was private and not a public offering).[2]

Because Plaintiff does not allege that he purchased through a public offering, and does not allege facts that would support an inference that the "membership units" were being sold through a public offering, the cause of action lacks an element necessary to state a claim under the 1933 Act. Accordingly, the motion for judgment on the pleadings on the second cause of action is **GRANTED**, but **WITH LEAVE TO AMEND**. Plaintiff will have until September 3, 2004 to file with the Court a Second Amended Complaint.

## D. THE STATE LAW CLAIMS

### 1. State Law Fraud Claim

The Court's analysis of the PSLRA requirements applies to this claim. As noted, the Court does not believe that the pleading satisfies the requirements of Rule 9, let alone the PSLRA. Accordingly, the motion to dismiss this claim is **GRANTED WITH LEAVE TO AMEND.**

### 2. Breach of Fiduciary Duty

The FAC alleges that Anson and Garrett, in their capacities as officers and managers of Four Star, and their accounting firm, as the accountant for the company, owed a fiduciary duty to investors

---

[2] Plaintiff cites Fisk v. Superannuities, Inc., 927 F. Supp. 718, 730-31 (S.D.N.Y. 1996) a district court case in which the Court refused to follow Gustafson despite "some broad language" that would have required the district court to dismiss the action. Whether or not the majority in Gustafson correctly analyzed the issue (see Justice Scalia's dissent), it appears clear to this Court that the majority unmistakably held that an offering through a private placement memorandum does not constitute a "public offering," and is, therefore, not subject to suit under Section 12(2) of the 1933 Act. Allegations that defendants violated Section 12(1) do not save the case because the Gustafson analysis would apply to that section as well. This point is best illuminated by Justice Ginsburg's dissent, in which she notes that there is no dispute that Section 12(1) applies only to public offerings. Gustafson, 513 U.S. at 600 (J. Ginsburg dissenting).

in the company. The problem with the claim is that it broadly sweeps in all prior allegations, most of which relate to fraudulent statements in connection with the sale of units, and which would not fall within the breach of fiduciary duty claim. As it is now stated, the FAC contains essentially the broad statement that, based on "these defendants' misrepresentations, deceptive statements and other intentional conduct to the detriment of Plaintiff, as herein alleged in detail, these defendants therefore breached their fiduciary duties to Plaintiff." (FAC, ¶ 73). Whether the misconduct relates to the sale of securities, a time when the defendants owe no fiduciary duty to the plaintiff, or to misconduct in the operation of Four Star after the investment, a time when the defendants likely do owe plaintiff a fiduciary duty, cannot be discerned from the complaint. For that reason, the Court concludes that the allegations are insufficient and that the motion should be **GRANTED WITH LEAVE TO AMEND**.

### 3. Unfair Business Practices

The California Court of Appeal recently held that Section 17200 claims, whose predicate acts are securities violations, are not actionable. Bowen v. Ziasun Techs., Inc., 11 Cal. Rptr. 3d 522, 530-31, 533 (2004). That decision was based on the Ninth Circuit's ruling in Spinner Corp. v. Princeville Dev. Corp., 849 F.2d 388 (9th Cir. 1988), which held that claims based upon securities violations were not actionable under Hawaii's version of section 17200. Accordingly, the Section 17200 claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

### D. CONCLUSION

For the reasons discussed above, the Section 10, Section 12, common law fraud, and breach of fiduciary duty claims are **DISMISSED WITH LEAVE TO AMEND**. Plaintiff will have until **September 3, 2004** to file with the Court a Second Amended Complaint. The unfair business practice claim brought under Section 17200 is **DISMISSED WITHOUT LEAVE TO AMEND**.

IT IS SO ORDERED.